

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0593-20

---

**JOSE CESAR SANCHEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### ECTOR COUNTY

---

YEARY, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, KEEL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. HERVEY, J., concurred in the result. KELLER, P.J., dissented.

## O P I N I O N

The issue in this case is whether the trial court should have permitted Appellant to withdraw his waiver of a jury trial that was executed in anticipation of a negotiated plea that was never consummated. After overruling several requests by Appellant to withdraw

his jury waiver, the trial court afforded him a bench trial.[1] We conclude that the trial court abused its discretion by failing to permit the withdrawal of appellant's jury-trial waiver, and we therefore reverse.

## I.      BACKGROUND

### (a) In the Trial Court

Appellant was indicted in November of 2016 and arraigned in December. His case was originally set for a pre-trial hearing in March of 2017. After this initial pre-trial setting was continued several times, Appellant's initially appointed counsel filed a motion to withdraw from representing him on the ground that she did not speak Spanish, Appellant's first language. This motion was heard on April 13, 2017, and again on April 20, 2017. On the latter date, the trial court granted the motion to withdraw and appointed Appellant new, Spanish-speaking counsel.

On the same day that the trial court appointed Spanish-speaking counsel to represent Appellant, out-going counsel informed the trial court that Appellant had resisted the State's plea bargain offers and was inclined to go to trial. The trial court announced that it had arranged for an interpreter to appear for a trial setting on April 26, 2017, but then adjourned the April 20th pre-trial hearing without setting a new trial date, apparently because the trial court was uncertain when the interpreter could be rescheduled. At some point, however, the case was reset for a jury-trial date of July 10, 2017.

---

[1] Appellant was convicted of the offense of continuous sexual assault of a child, and the trial court thereafter assessed his punishment at life in the penitentiary and a $5,000 fine. TEX. PENAL CODE § 21.02(b), (h).

The next time Appellant appeared in open court was on June 29, 2017, with his new counsel, for a hearing on a negotiated guilty plea. The plea hearing got off to a rocky start, however, when Appellant expressed an immediate hesitation about waiving a jury:

> THE COURT:  Mr. Sanchez, you were scheduled for a plea hearing today at 1:30 based on a waiver of a right to a jury trial that you executed earlier today in order to dispose of your case; is that correct?

> THE DEFENDANT:  I did sign it but I didn't know I would lose my right to -- to have a jury.

Appellant acknowledged that his counsel had gone over the plea papers with him that morning and had generally described them to him, but he claimed that counsel had failed to explain "[t]hat I was giving up a right to a jury trial." Appellant's counsel then recounted to the trial court the explanation he had given Appellant that morning, including "that he would be giving up his right to a jury trial." He assured the trial court that Appellant had understood this explanation and was now simply reneging on his choice to plead guilty.

The following exchange between the trial court and defense counsel then occurred:

> THE COURT:  And did you read the waiver of right to a jury trial to him verbatim?

> [DEFENSE COUNSEL]:  I broke it down into Spanish because it is kind of difficult verbatim because of the legal [sic] but there was no question. He knew what he was looking at and he knew what he was getting and the consequences of the whole thing. I don't know what happened to him when he came back.

> THE COURT:  And this morning when -- before Mr. Sanchez executed the waiver of right to a jury trial, you did explain to him the -- by executing the document, he was acknowledging that if there was any trial after the execution of the waiver, that the trial would be to the Court, not only as to guilt-innocence but also as to punishment; is that right?

> [DEFENSE COUNSEL]:  I made it -- yes, it is.

THE COURT: Okay.

[DEFENSE COUNSEL]: And I made that clear and that he would not have a right to a --

THE COURT: And you are confident that he understood that condition before he signed the waiver?

[DEFENSE COUNSEL]: He was -- I had to -- he was kind of hesitant about it. He didn't understand -- what does this mean, what -- so I spent time explaining it step by step. Because I wanted to make sure that he knew before I came out here and brought you that, and that he knew what we were doing. And so there is no question that he understood. Now, he changed his mind but that's fine. But I told him --

THE COURT: But before Mr. Sanchez executed this document and at the time he executed the document, you are certain that he understood the substance of it?

[DEFENSE COUNSEL]: One hundred percent.

THE COURT: Okay. And that was this morning?

[DEFENSE COUNSEL]: That was this morning.

THE COURT: And he comes back this afternoon and he tells you that he is electing to reject the State's plea offer?

[DEFENSE COUNSEL]: Well, he apologized to me. He said, I have to apologize to you but I have changed my mind.

The trial court next informed Appellant what it understood to be the substance of the State's plea offer—a ten-year sentence in exchange for Appellant's guilty plea to a lesser-included offense. Appellant continued to evince some ambivalence about accepting the State's offer, although at one point he asserted, "I do want to plead guilty." He asked the trial court for a few days to consider his options. But the State informed the trial court

that its offer would expire at 5 p.m. that day, and the trial court gave Appellant only that long to make up his mind.

The June 29th plea hearing then concluded with the following exchange between the trial court and the State:

> [PROSECUTOR]: Judge, are we going to do a bench trial or a jury trial?
>
> THE COURT: If we proceed to trial, it will be before the Court because the waiver --
>
> [PROSECUTOR]: I just wanted to make sure.
>
> THE COURT: Because the waiver has been executed and the jury trial has been waived so it is just a matter of Mr. Sanchez's decision as to whether to or not to accept the plea offer that you have extended to him today.

Appellant apparently declined the State's plea offer. The case did not proceed to a jury trial on July 10th as scheduled. Instead, on July 19, 2017, the trial court issued an order setting the case for a bench trial on August 7, 2017.[2]

In the meantime, the State filed two motions to amend the indictment, on June 30, 2017, and July 10, 2017. The amendments were intended to adjust the time-period over which Appellant is alleged to have committed the acts of sexual abuse against the victim which constituted the offense of continuous sexual abuse. On July 10th, the trial court issued an order by which it essentially granted both of the State's motions to amend the indictment. Appellant then exercised his statutory right to a ten-day period "to respond to"

---

[2] The docket sheet reflects that the cause was set for trial on three dates prior to the aborted guilty plea on June 29th: March 27, 2017, April 26, 2017, and May 22, 2017. It was set for trial on two other occasions after the hearing of the aborted guilty plea on June 29th, first on July 10, 2017, and then on July 17, 2017, before it finally proceeded to a bench trial on August 7, 2017.

an amended indictment,[3] causing a delay in the July 10th trial setting. For Appellant's part, on August 2, 2017, five days before the bench trial ultimately occurred, he filed a written motion asking the trial court to restore his case to the jury-trial docket. The trial court did not rule on this motion prior to the bench trial on August 7th.

After the interpreter was sworn in for purposes of the bench trial on August 7th, Appellant formally requested the trial court to allow him to withdraw his waiver of jury trial. When the State refused to consent to the withdrawal, the trial court entertained Appellant's arguments as to why allowing him to withdraw his waiver would not "inconvenience" the State. Appellant argued that, even after he rejected the State's plea offer, the case could have proceeded to a jury trial on July 10th, as had been scheduled, had the State not amended its indictment, indicating that it was not ready on that date. The State responded that it could have been ready on July 10th, notwithstanding its wish to amend the indictment, had Appellant not insisted on his statutory right to ten days to prepare, causing the trial court to reset the trial for August 7th. The trial court denied Appellant's motion, and the bench trial commenced.

After the parties had rested and closed at the guilt-innocence phase of the bench trial, but before the trial court heard closing arguments, the trial court *sua sponte* announced that it desired to revisit its ruling on Appellant's motion to withdraw his jury trial waiver. The trial judge announced that he had reviewed this Court's plurality opinion in *Marquez*

---

[3] *See* TEX. CODE CRIM. PROC. art. 28.10(a) ("On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.").

*v. State*, 921 S.W.2d 217 (Tex. Crim. App. 1996),[4] and he engaged in the following exchange:

[THE COURT]: . . . Essentially what this Court has to determine to grant a defendant's request to permit a withdrawal of a jury waiver is, first, is whether or not the request is submitted sufficiently in advance of trial. I believe it has. The initial request was discussed on June 29th at the time this matter was addressed in open court with Mr. Sanchez as far as his -- the jury waiver he had executed that day. But there are three other elements. One is whether or not the granting of the request will interfere with the orderly administration of the business of the Court. And the defendant had the burden to overcome that and I find that the defendant has not. It is very clear that this case has been delayed time and time and time again. It has been set for trial -- or had been set for trial before Mr. Sanchez had executed this jury waiver on four previous occasions. In fact, the second time this case was set for trial, which was to be tried on April 26th, the week before Mr. Sanchez had requested that his attorney be permitted to withdraw, even though his attorney had been appointed since December of '16 on the basis that he couldn't communicate with his attorney, and that was [Appellant's initially-appointed counsel]. So the Court delayed the trial and permitted Mr. Sanchez to have other court appointed counsel, and that is what we arrived at today.

The second element is whether or not the granting of the request would result in unnecessary delay or inconvenience to witnesses. And I would like to hear from the State on this, but it appears to me, as in all cases, that if the case is set for trial, as it has been in this case several times, you notify your witnesses. If it is delayed they are advised of the delay. Some witnesses become rather frustrated with the fact the case can't proceed because of numerous delays. So I would like to hear from the State on that because I am just guessing, having not known what has gone on in your office as far as this case is concerned.

[PROSECUTOR]: May I speak, Your Honor?

THE COURT: Of course.

[PROSECUTOR]: Your Honor, as it came out in testimony from [the complainant], I have met with her at least six or more times. One of the

---

[4] The standard for determining whether a trial court has abused its discretion in failing to allow a defendant to withdraw a waiver of jury trial, first announced by a plurality of the Court in *Marquez*, was later adopted by a solid majority of the Court in *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009).

reasons I have had to meet with her multiple, multiple times is this case has been continuously reset and reset. And I would like on the record that that is not a reflection -- saying something poorly about these defense counsels. They have done an imminent job, both in this case and all the other cases that I have ever, in my experience dealing with. They are excellent attorneys and they have represented their client very well. But because of the actions of their client, which I don't think impugns them in any way, shape or form, this case has been delayed and delayed and delayed. I have had to bring in all the witnesses you saw today, plus others that I chose not to call, and we had to meet with them over and over again. And quite honestly, Your Honor, the victim in this case was very reluctant to go forward. As you could tell from her testimony, she is very nervous, she is very skittish. She is scared. She is scared of the process. She is scared of the defendant. I think she might even be a little scared of me. The reality is I had to promise her that I would do everything in my power to obtain a plea in this case just to get her to agree to come down here and testify. And when we are talking about harm or prejudice to the State's case, every single time a case is continued or reset, for whatever reason, there is a chance that the 13th time a witness tells the story, they just don't care anymore. They refuse to come in and they refuse to cooperate. That's the potential harm and/or prejudice that the State is going to have, in any criminal case. And in cases of sexual assault where you are dealing with young children who are talking about the very individual who they believe -- well, may not be their biological father, but for all practical purposes was their father, makes it even more difficult. Thank you, Your Honor.

THE COURT:  I think that would -- what you have just presented to the Court would address the element which is prejudice to the State or potential prejudice to the State. When I consider everything that has been presented by counsel, I cannot find that the defendant has met the burden that would justify the granting of a request to withdraw the jury waiver.

The trial court found Appellant guilty and assessed his punishment.[5]

### (b) On Appeal

On appeal, Appellant raised two points of error related to his right to a jury trial. In his first point, he argued that he did not validly waive his right to a jury trial in the first place. The State conceded that Appellant's jury trial waiver had not been executed in strict

---

[5] *See* note 1, *ante*.

compliance with Article 1.13(a) of the Code of Criminal Procedure, since it was not executed "in open court[,]" as that provision requires. *Sanchez v. State*, No. 11-17-00254-CR, 2020 WL 2837023, at *2 (Tex. App.—Eastland May 29, 2020) (mem. op., not designated for publication); TEX. CODE CRIM. PROC. art. 1.13(a). But the court of appeals found that error to have been harmless, concluding that his jury-trial waiver was no less knowingly and intelligently entered for not having been executed in strict conformity with the statute. *Sanchez*, 2020 WL 2837023, at *2 (citing *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002)). Appellant challenged this holding via his first ground for review in his petition to this Court for discretionary review, which we refused.

In his second point of error, Appellant argued that the trial court abused its discretion by failing to permit him to withdraw his waiver of his right to a jury trial. The court of appeals decided that Appellant could not establish that the trial court abused its discretion because he was unable to show the "absence of adverse consequences" to the State from the restoration of his jury-trial right. *Id.*, at * 3. It further explained that Appellant failed to establish that withdrawal of his waiver would not result in an interference with the orderly administration of the trial court's business, in view of the many resets for trial occasioned by Appellant's insistence on a Spanish-speaking attorney and the need for an interpreter. *Id*. And, in view of the prosecutor's representations about the effects of delay on his witnesses, especially his principal witness (the complainant), Appellant was unable to show that reinstatement of his right to a jury trial would not result in unnecessary delay or inconvenience to witnesses. *Id*., at *4. We granted discretionary review only of the ground in Appellant's petition that challenges this holding.

## II.    WITHDRAWAL OF JURY-TRIAL WAIVER

A defendant has an "absolute" right to a jury trial; and, though it may be waived, consistent with the federal constitution, the record must show that his waiver was express, knowing, and intelligent. *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009). Moreover, by statute, a waiver must also "be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." TEX. CODE CRIM. PROC. art. 1.13(a). "But once the defendant validly waives his right to a jury trial, he does not have an unfettered right to reassert that right." *Hobbs*, 298 S.W.3d at 197.

As the party who seeks to alter the *status quo*, the defendant bears the burden when he seeks to withdraw a valid jury-trial waiver. In *Hobbs*, this Court explained that, as a predicate to withdrawing a valid waiver, a defendant must show that granting his request will not: (1) interfere with the orderly administration of the business of the trial court; (2) result in unnecessary delay or inconvenience to witnesses; or (3) prejudice the State. *Id*. at 197–98. The trial court's decision whether to grant such a request is discretionary. *Id*. at 198. And if the record rebuts the defendant's assertions that his request will not interfere with court business, delay the proceedings, inconvenience witnesses, or prejudice the State, then there is no abuse of discretion. *Id*.

The question arose in this case: Did Appellant *validly* waive his right to a jury trial in the first place, for purposes of applying the *Hobbs* standard for measuring the trial court's discretion to deny a withdrawal of the waiver? After all, as the State has conceded and the court of appeals has recognized, Appellant's jury-trial waiver, though in writing, did not

otherwise conform to the requirements of Article 1.13(a); it was not "made" by Appellant—indeed, it was renounced by him—"in open court." *See Sanchez*, 2020 WL 2837023, at *2. We will nevertheless assume without deciding, for purposes of this case, that for a jury-trial waiver to be "valid" within the meaning of the *Hobbs* standard, it need only satisfy the federal constitutional criteria for validity; namely, that the record show that it was made expressly, knowingly, and intelligently, regardless of whether it was executed in writing or in open court. (After all, we refused Appellant's first ground for discretionary review, whereby he assailed the court of appeals' conclusion that the failure of his waiver to conform with Article 1.13(a)'s "open court" requirement was harmless). Entertaining that assumption for purposes of resolving Appellant's second ground for review, we are still compelled to conclude that, on the facts of this case, the trial court abused its discretion by failing to permit Appellant to withdraw his jury-trial waiver.

### III.    ANALYSIS

### (a) The Timeliness of Appellant's Request to Withdraw

The court of appeals concluded that Appellant "effectively asked to withdraw his waiver on the day of the plea hearing[,]" on June 29th. *Id*., at *3. That being the case, Appellant contends that the court of appeals erred to consider the possibility of interference, delay, inconvenience, or prejudice that may have accrued between June 29th and the date of the bench trial, on August 7th, when the trial court ultimately made a ruling. Appellant's Brief at 11–12. Instead, Appellant argues that the *Hobbs* factors should be assessed as they would have applied on June 29th. *Id*.

The State counters that Appellant did not, in fact, make any explicit request to withdraw his jury-trial waiver at any time during the June 29th plea hearing; that he did not make any such formal request until filing his motion to restore the case to the jury docket, on August 2nd. State's Brief at 6, 9–11. Therefore, according to the State, the court of appeals correctly considered events that accrued right up until the date of the bench trial itself—interference with the court's docket and delay of the trial brought on by Appellant's insistence on his statutory 10-day period to respond to the State's amendments to the indictment, and inconvenience to the State's witnesses, particularly the complaining witness—in assessing the *Hobbs* factors. *Id*. at 14.

The State is correct that Appellant made no express or formal request to withdraw his jury-trial waiver during the June 29th plea hearing. That being said, he certainly made his ambivalence about waiving a jury trial clear to the trial court at the very outset. And indeed, the trial judge himself later indicated on the record that he had understood Appellant to have been seeking to withdraw his jury-trial waiver at that time. When he revisited the issue of withdrawal, after both sides had rested and closed at the guilt phase of Appellant's bench trial, on August 7th, the trial judge declared: "The initial request was discussed on June 29th at the time this matter was addressed in open court with Mr. Sanchez as far as his -- the jury waiver he had executed that day." Under these circumstances, we agree with both Appellant and the court of appeals that the trial court understood Appellant to have "effectively" requested a withdrawal of his jury-trial waiver at the plea hearing; and we agree with Appellant that whether he satisfied the *Hobbs* factors should be assessed as of the date of this initial *de facto* request, on June 29th.

### (b) Applying the *Hobbs* Factors

The trial court ultimately ruled that the numerous resets of the case for trial, both before and after the June 29th plea hearing, disrupted the court's docket and threatened to cause the State's complaining witness to become reticent. But we conclude that the first handful of resets that occurred, prior to the June 29th plea hearing, are in no way attributable to Appellant's requests to withdraw his jury trial waiver. If anything, they are instead attributable to Appellant's insistence upon obtaining Spanish-speaking counsel and to the trial court's concern that an interpreter be secured, in order to ensure a fair trial— presumably a trial before a jury, since Appellant had not waived that right yet. These events had nothing to do with, and were not in any way affected by, Appellant's later waiver of his right to a jury trial, much less his request to withdraw that waiver. Both the trial court and the court of appeals were mistaken to take those circumstances into account in assessing whether Appellant could satisfy the *Hobbs* factors.

As for any disruption, delay, or inconvenience *following* the June 29th hearing, we do not believe those events are any more relevant to a determination of whether the trial court abused its discretion by prohibiting Appellant from withdrawing his jury-trial waiver *at the plea hearing itself*. Within just a few hours of his execution of the waiver that morning, Appellant "effectively" asked to withdraw it. To have granted his request right away would have caused no disruption to court business, delay in the proceedings, or inconvenience to witnesses that would not have been attendant to his never having waived the right in the first place.

Indeed, this case was on the docket for a jury trial to be conducted on July 10th. Had Appellant been allowed to withdraw his waiver, there is no reason to believe on this record that he could not have been ready for that setting other than the State's amendments to the indictment, which the State insisted did not affect its *own* readiness to proceed on July 10th in any event. And the amendments themselves were not a direct product of Appellant's request to withdraw his jury-trial waiver. We think the court of appeals was also mistaken to have regarded these circumstances as a legitimate justification under *Hobbs* for refusing to allow Appellant to withdraw his jury trial waiver *on June 29th*.

We turn finally to the related *Hobbs* factors of potential inconvenience to the witnesses and prejudice to the State. The prosecutor complained at the conclusion of the bench trial that, before the June 29th plea hearing had even begun, he had already informed the complaining witness that Appellant had agreed to accept the State's plea offer, which would relieve his "skittish" witness of the obligation to testify. But any inconvenience to the complaining witness and consequent prejudice to the State was occasioned, not by Appellant's request to withdraw the jury-trial waiver itself, but by his broader decision not to accept the State's plea bargain after all. The only consequence of allowing Appellant to withdraw his jury-trial waiver once he had decided to reject the guilty plea would have been that the reluctant complaining witness would eventually have to testify in a *jury* trial rather than a *bench* trial. We regard any ensuing inconvenience to the witness and prejudice to the State to be, at best, *de minimis* when we consider all the circumstances—especially the fact that Appellant made it known to the trial court within mere hours of having executed the jury-trial waiver that he wished to withdraw it.

There is no case from this Court of which we have been made aware that is factually on all fours with this one. Nevertheless, the Court decided, in an analogous case, that when a defendant had accepted a plea offer, and he was later permitted to withdraw his guilty plea, the trial court erred in failing to honor his request for a jury trial, notwithstanding the prior jury-trial waiver he executed as part of the plea bargain. *See Wilson v. State*, 698 S.W.2d 145, 146–47 (Tex. Crim. App. 1985); *and see* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 40:61, at 575 (3d ed. 2011) ("If the trial court grants a motion to withdraw a plea of guilty or nolo contendere, a trial court errs in failing to honor the defendant's request for a jury trial.") (citing *Wilson*, 698 S.W.2d at 146–47).

This is not a case, of course, in which the defendant *accepted* a bargain with the State to plead guilty and then attempted to withdraw from the guilty plea *itself*. Here, Appellant ultimately did not accept the State's plea offer in the first place. But a defendant who executes a jury waiver in anticipation of a negotiated guilty plea, and then balks at executing the plea and immediately seeks the reinstatement of his right to a jury trial, should be no less entitled to have his wish respected than the defendant who goes through with the guilty plea and only later seeks to withdraw from both the plea itself and the attendant jury-trial waiver. He should be no more bound by his earlier jury-trial waiver than the defendant who accepts but then reneges upon a bargained-for guilty plea, at least not when he immediately makes it clear that he no longer wishes to be bound by the jury-waiver.

**CONCLUSION**

We conclude that the trial court abused its discretion in forcing Appellant to submit to a bench trial. Accordingly, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings consistent with this opinion.


DELIVERED:                 September 22, 2021
PUBLISH